# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **PATRICIA FONDELHEIT,** : | Civil Action No. |
|     Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **EARTH RETENTION SYSTEMS LLC and** : | |
| **TERRY CHAPPELL,** : | |
|     Defendants. : | FEBRUARY 23, 2023 |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Patricia Fondelheit, brings this action against Defendants, Earth Retention Systems LLC and Terry Chappell, because Defendants failed to pay her overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. 201 et seq. (hereinafter "FLSA"), and the Connecticut Minimum Wage Act, Conn. Gen. Stat. 31-58 et seq. (hereinafter "CMWA").  Plaintiff also alleges that Defendants retaliated against her in violation of the Connecticut Family and Medical Leave Act, Conn. Gen. Stat. 31-51kk, et. seq. (hereinafter "CT FMLA") and that Defendant Earth Retention Systems LLC retaliated against her in violation of Section 31-51q of the Connecticut General Statutes.

### PARTIES

2. Plaintiff, Patricia Fondelheit ("Plaintiff"), resides in Putnam, Connecticut.

3. Defendant Earth Retention Systems LLC (hereinafter "ERS") is a limited liability company organized under the laws of Connecticut, with a principal place of business in Sterling, Connecticut.  ERS conducts business and employs individuals in Connecticut.  ERS engages in interstate commerce and has an annual volume of sales

or business that exceeds $500,000 per year. Defendant is an employer for purposes of the FLSA, the CMWA, the CT FMLA, and Conn. Gen. Stat. § 31-51q.   During the relevant time period, Defendant has employed more than 15 employees.

    4.    Defendant Terry Chappell is the principal member and operator of ERS (hereinafter "Chappell" and together with ERS, "Defendants").  Chappell exercised sufficient control over the operations of ERS to be considered Plaintiff's employer under the FLSA and CMWA.  Chappell exercised authority regarding the managerial and administrative practices of ERS.  Chappell was responsible for making decisions regarding Plaintiff's wages and is the specific cause of the wage violations alleged herein.  Chappell also qualifies as an employer under Conn. Gen. Stat. § 31-51kk(4) and the CT FMLA.  Chappell resides in Connecticut.

## JURISDICTION

    5.    This Court has subject matter jurisdiction over Plaintiff's claims under the FLSA pursuant to 28 U.S.C. § 1331 and 29 U.S.C. 216(b) because they present federal questions.  The Court has supplemental jurisdiction over Plaintiff's claims under the CMWA, the CT FMLA, and Conn. Gen. Stat. § 31-51q pursuant to 28 U.S.C. § 1367.

    6.    This Court has personal jurisdiction over Defendants because they are located in Connecticut, transact business in Connecticut, and employ individuals in Connecticut.

## BACKGROUND

    7.    Plaintiff commenced her employment with Defendants in October 2019. At that time, Defendants hired Plaintiff to work as a "consultant" to handle payroll and perform other bookkeeping functions for ERS.

8. In or around January 2020, Defendants hired Plaintiff as an employee and assigned her the job title of Office Manager at ERS.

9. Chappell hired Plaintiff and made decisions regarding her wages, hours, and rate of pay.

10. Throughout her employment with Defendants, Plaintiff worked an average of approximately 42-45 hours per week, including weekends and evenings. Plaintiff was never paid any overtime for any of the hours over 40 she worked each week.

11. During her employment with Defendants, Plaintiff typically worked the following schedule: on Mondays, Tuesdays, Thursdays, and Fridays, Plaintiff would typically work at least approximately nine hours per day, arriving to work between approximately 8:30 a.m. and 9:00 a.m. and leaving work between approximately 5:30 p.m. and 6:00 p.m., although on some days she began working earlier than 8:30 a.m. and/or worked later than 6:00 p.m; on Wednesdays, Plaintiff would typically work approximately between six-and-a-half and seven hours per day, arriving to work at approximately 11:00 a.m. and leaving work between 5:30 p.m. and 6:00 p.m., although there were times that she worked more hours on Wednesdays.   Plaintiff also received calls and requests from Chappell on nights and on weekends, which required her to work additional time for which she was not compensated.

12. During her employment with Defendants, Plaintiff spoke out about and resisted participating in activities she believed to be illegal and/or unethical.

13. Defendants are in the business of constructing massive retaining walls and they employ people who work as laborers and heavy equipment operators.  The

construction of massive retaining walls and the operation of heavy equipment presents the risk of serious injury to workers and/or members of the public.

14. In order to comply with legal and/or contractual requirements, Defendants' employees who worked as laborers and heavy equipment operators need to obtain certifications that they completed OSHA safety training and CPR training.

15. In certain instances, Defendants fraudulently purchased CPR training certificates for employees who never completed the training. For instance, in August 2022, Defendants purchased Adult First Aid/CPR/AED Training completion certificates from the American Red Cross for a number of its employees who had not completed said training.

16. In approximately August 2022, Defendants also purchased fraudulent OSHA safety cards from a trainer which contained falsified information, claiming that employees had completed safety training that was never held. Defendants were aware at the time of purchasing said falsified OSHA safety cards that the employees had not completed the training as claimed on the falsified OSHA safety cards.

17. Plaintiff objected to the purchase of falsified CPR completion certificates and OSHA10 and OSHA30 safety cards, which Defendants procured for the purpose of providing them to third parties to support false claims that ERS employees completed the mandatory classes and received the necessary certifications and trainings.

18. In approximately August of 2022, Plaintiff also objected to an action by Defendants relating to their 401(k) plan that Plaintiff understood was contrary to IRS rules governing 401(k) plans. Chappell wanted to engage in fraudulent employment actions for certain employees who had become union members in order to avoid

restrictions imposed by IRS rules and the terms of the 401(k) plan.  Plaintiff objected, told Chappell that his plan was against IRS rules, and stated, "why don't we just call the IRS to come here and audit us?".

19. On Friday, September 2, 2022, Plaintiff's husband was suddenly admitted to the hospital with a serious health condition. Plaintiff texted Defendants on or about Monday, September 5, 2022, to inform them of her husband's serious health condition, giving them detailed information regarding his health condition, and the need for her to work from home for that week, on a reduced work schedule, in order to provide care for her husband.

20. On September 14, 2022, shortly after she returned to the office, Plaintiff received multiple contacts from Chappell who was having issues with a computer program that was not working properly. Since this was not within her field of expertise, Plaintiff went into Troy Chappell's (Chappell's son) office to inquire if anyone knew what the issue was. Chappell's son verbally abused Plaintiff, swore at her and told her to "get the f___ out!", thus terminating her employment.

21. Plaintiff was given no reason for the termination of her employment.

**CLAIMS**

**COUNT ONE:**     **FAILURE TO PAY OVERTIME IN VIOLATION OF FLSA**
                              **(as against ERS and against CHAPPELL)**

18. The FLSA requires that Defendants pay overtime wages to Plaintiff at the rate of one and one-half times Plaintiff's regular rate of pay for all hours that Plaintiff worked in excess of forty hours per week.

19. Defendant ERS and Defendant Chappell are employers who are subject to the FLSA.

5

20. Plaintiff worked an average of 42-45 hours per week and was entitled to receive overtime wages for all hours worked in excess of 40 hours per week.

21. Defendant ERS and Defendant Chappell violated the FLSA by failing to pay Plaintiff overtime wages for the hours she worked each week in excess of 40 hours per week.

22. Defendants' failure to pay overtime was intentional, knowing and willful.

22. Plaintiff has suffered damages as a result of Defendants' intentional, knowing and willful failure to pay overtime in violation of the FLSA.

23. Under the FLSA, Plaintiff is entitled to an award equal to twice the full amount of such wages owed to Plaintiff, with costs and such reasonable attorney's fees as may be allowed by the court.

**COUNT TWO:     FAILURE TO PAY OVERTIME IN VIOLATION OF CMWA
(as against ERS and against CHAPPELL)**

24. The CMWA requires that Defendants pay overtime wages to Plaintiff at the rate of one and one-half times Plaintiff's regular rate of pay for all hours that Plaintiff worked in excess of forty hours per week.

25. Defendant ERS and Defendant Chappell are employers who are subject to the CMWA.          .

26. Plaintiff worked an average of 42-45 hours per week and was entitled to receive overtime wages for all hours worked in excess of 40 hours per week.

27. Defendant ERS and Defendant Chappell violated the CMWA by not paying Plaintiff any overtime wages for the hours she worked each week in excess of 40 hours per week.

28. Defendants' failure to pay overtime was intentional, knowing and willful.

29. Plaintiff has suffered damages as a result of Defendants' intentional, knowing and willful failure to pay overtime in violation of the CMWA.

30. Under the CMWA, Plaintiff is entitled to an award equal to twice the full amount of such wages owed to Plaintiff, with costs and such reasonable attorney's fees as may be allowed by the court.

**COUNT THREE:** VIOLATION OF CONN. GEN. STAT. § 31-51q (as against ERS)

27. Based on the foregoing, Defendant ERS retaliated against Plaintiff, and subjected Plaintiff to discipline and discharge, in violation of Conn. Gen. Stat. § 31-51q.

28. Plaintiff spoke as a citizen on matters of public concern. Plaintiff also engaged in speech relating to serious wrongdoing and official dishonesty and relating to threats to public health and safety.

29. Plaintiff engaged in speech that is protected by Conn. Gen. Stat. § 31-51q, including speech protected by the First Amendment to the United States Constitution, and Sections 3, 4, or 14 of Article First of the Connecticut Constitution.

30. Defendant ERS had knowledge of Plaintiff's protected speech.

31. Defendant ERS retaliated against Plaintiff, and subjected Plaintiff to discharge or discipline, because of Plaintiff's protected speech, in violation of Conn. Gen. Stat. § 31-51q.

32. Defendant's illegal actions caused Plaintiff to suffer damages, including, but not limited to, economic damages, compensatory damages, and emotional distress.

33. Defendant has acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

34. Plaintiff has also incurred attorney's fees and costs.

**COUNT FOUR:   RETALIATION IN VIOLATION OF THE CONNECTICUT FAMILY AND MEDICAL LEAVE ACT**

35.  Based on the foregoing, Defendants subjected Plaintiff to retaliation in violation of the Connecticut Family and Medical Leave Act.

36.  Defendant ERS and Defendant Chappell are employers as defined in Conn. Gen. Stat. 31-51kk(4) and are subject to the requirements of the CT FMLA.

37.  Plaintiff qualifies as an eligible employee entitled to the protections of the CT FMLA.

38.  Plaintiff has engaged in protected activity under the CT FMLA by exercising her rights under the CT FMLA and requesting time off to take care of her husband due to his serious health condition.

39.  Defendants subjected Plaintiff to adverse actions, including the termination of her employment, for engaging in protected activity under the CT FMLA.

40.  There is a causal connection between Plaintiff's protected activity and Defendants' adverse actions against Plaintiff.

41.  Defendants' actions have caused Plaintiff to suffer damages, including, but not limited to, economic damages, compensatory damages, and emotional distress.

42.  Plaintiff has also incurred attorney's fees and costs.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff claims judgment against Defendants, and:

1. Economic and Non-Economic compensatory damages, including but not limited to, money damages, damages to compensate for past and future lost wages and benefits, emotional distress, loss of enjoyment of life;
2. Punitive damages pursuant to Conn. Gen. Stat. 31-51q;
3. Liquidated damages pursuant to the FLSA and CMWA;
4. Statutory and common law Attorney's fees and costs;
5. Interest and costs;
6. Such other relief as in law or equity that may pertain.

**JURY DEMAND**

Plaintiff demands a trial by jury.

PLAINTIFF,
PATRICIA FONDELHEIT

By */s/ Todd Steigman*
Todd Steigman (ct26875)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford CT 06103
P: (860) 246-2466
F: (860) 246-1794
Email: tsteigman@mppjustice.com
Her attorneys